IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAVID EUGENE HAYNES,<br><br>       Plaintiff,<br><br>vs.<br><br>COLONEL BRYAN WAUGH, in his official capacity as Superintendent of the Nebraska State Patrol, et al.,<br><br>       Defendants. | 8:25-CV-734<br><br><br>MEMORANDUM AND ORDER |

The plaintiff, David Eugene Haynes, alleges that he is erroneously prohibited from possessing a firearm, and seeks relief under 18 U.S.C. § 925A. He seeks a court order directing the defendants—Colonel Bryan Waugh, in his official capacity as the Superintendent of the Nebraska State Patrol ("the State"); and the United States of America, Todd Blanche,[1] in his official capacity as the Acting Attorney General of the United States, and the Federal Bureau of Investigation (collectively, "the United States")—to correct and clarify their records "so that no erroneous firearms disability is applied." *See* filing 23 at 9. This matter comes before the Court on the defendants' motions to dismiss. Filing 24; filing 35. The plaintiff also filed a motion for expedited consideration and a preliminary injunction. Filing 3.

---

[1] Todd Blanche, Acting Attorney General for the United States, is substituted for Pamela Bondi as a defendant in this action pursuant to Fed. R. Civ. P. 25(d)(1).

## I. STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, the text of the plaintiff's complaint must contain enough factual allegations to nudge the plaintiff's claims across the line from conceivable to plausible. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff's claims are plausible if the facts alleged allow the Court to reasonably infer that the defendant could be held responsible for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Whether a plaintiff is represented or *pro se*, the plaintiff's complaint must allege specific facts sufficient to state a claim. See *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

However, the Court must liberally construe *pro se* complaints, and these litigants are held to a lesser pleading standard. *Topchian v. JP Morgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014). If the essence of an allegation is discernible, although pleaded without "legal nicety," the Court will construe the complaint in a way that allows the claim to be evaluated within the proper legal framework. *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004).

When deciding a motion to dismiss under Rule 12(b)(6), the Court is normally limited to considering the facts alleged in the complaint. If the Court considers matters outside the pleadings, the motion to dismiss must be converted to one for summary judgment. Fed. R. Civ. P. 12(d). However, the Court may consider exhibits attached to the complaint and materials that are necessarily embraced by the pleadings without converting the motion. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). The Court can also take judicial notice of proceedings in other courts if they relate directly to the matters at issue. *Conforti v. United States*, 74 F.3d 838, 840 (8th Cir. 1996).

Here, the plaintiff provided records relating to his 2009 criminal convictions and copies of correspondence with the various defendants in

2

support of his motion for a preliminary injunction. *See* filing 7; filing 7-1. Those materials are embraced by the pleadings, and the Court will consider the plaintiff's filings as part of the record for the purpose of the defendants' motions to dismiss.

## II. BACKGROUND

In December 2008, the plaintiff was charged with four criminal counts in Hall County, Nebraska: terroristic threats, use of a deadly weapon in commission of a felony, strangulation, and assault in the third degree. Filing 7-1 at 13-15. The alleged victim of the assault and strangulation charges was the plaintiff's then-wife. The criminal complaint was amended via interlineation at the plaintiff's plea hearing in June 2009, and the plaintiff ultimately pled no contest to two misdemeanor assault counts:

- Count I: Assault 3rd Degree—Menacing Threat, Neb. Rev. Stat. § 28-310(1)(b); and

- Count II: Assault 3rd Degree, Neb. Rev. Stat. § 28-310(1).

Filing 7-1 at 3; filing 7-1 at 16-18. The victim of Count II was, at the time of the incident, the adult son of the plaintiff's then-wife. The victim of Count I was not related to the plaintiff in any way.

The plaintiff's 18-month term of probation was terminated early. Filing 7-1 at 22, 29. Following his conviction and probation, the plaintiff alleges he acquired and possessed several firearms without any issue. *See* filing 23 at 7. In 2018, he moved to Colorado. Filing 7-1 at 44. He most recently purchased a firearm in November 2023. Filing 23 at 7.

However, the plaintiff's attempt to purchase a firearm in February 2025 was denied. He appealed the denial to the Colorado Bureau of Investigation, and was told he was a prohibited person according to the FBI's National Instant Criminal Background Check System (NICS). *See* filing 23 at 8. The plaintiff's 2009 conviction had, apparently recently, been reported as a misdemeanor crime of domestic violence by the Nebraska State Patrol, rendering the plaintiff ineligible to purchase a firearm pursuant to § 922(g)(9). *See* filing 7-1 at 31. The Colorado Bureau of Investigation informed him that, according to NICS, he had been convicted of "Felony use of a weapon to commit a felony, Felony Assault by Strangulation, Aggravated Assault." Filing 7-1 at 31.

He appealed the denial to the FBI in April, who confirmed that the plaintiff was ineligible to possess a firearm, as all the elements of § 922(g)(9) were satisfied by his prior convictions. *See* filing 7-1 at 49. The FBI told the plaintiff to contact the Nebraska State Patrol to challenge the accuracy of his criminal record. Filing 7-1 at 54-55. JUSTICE, Nebraska's trial court case management system, incorrectly showed that the plaintiff had been convicted of the dismissed counts and listed his then-wife as the victim. *See* filing 7-1 at 3. The plaintiff filed a motion in Hall County court to correct the JUSTICE record, and the court ordered that the record be amended to reflect the crimes for which the plaintiff was actually convicted. Filing 7-1 at 3.

The plaintiff also contacted Nebraska Governor Jim Pillen's office, but Pillen said that, even after the JUSTICE record was corrected, the plaintiff was still a prohibited person. Pillen wrote that the plaintiff's relationship with the victim of Count II qualified as a domestic relationship for purposes of § 922(g)(9), and the plaintiff's only recourse to obtain a firearm was to apply for a pardon. Filing 7-1 at 71.

4

The plaintiff again went to Hall County, and submitted evidence that he has never lived with the victim, and the victim never participated in his "family life." Filing 7-1 at 119. The plaintiff had met the victim "only three times in three years." *See id.* In the police report related to the plaintiff's assault, the victim was listed as the plaintiff's stepson, but the plaintiff averred to the Hall County court that he and the victim had no legal or familial ties. *Id.*

The court issued an order in October 2025 finding that the plaintiff "was not convicted of any misdemeanor crimes of domestic violence," and finding the plaintiff's relationship with the victim did not "qualify as a domestic relation for purposes of evaluating the convictions in this case." Filing 7-1 at 9. The court, however, recognized that the firearm restrictions were a result of federal law, not state law, and the court lacked jurisdiction to interpret § 922(g)(9) or adjudicate the plaintiff's status in the NICS database.

The plaintiff continued to contact Governor Pillen, whose office repeated that the plaintiff needed to obtain a pardon. The plaintiff alleges that he "refuses to apply for or accept a pardon because he has never been convicted of a misdemeanor crime of domestic violence." Filing 23 at 6.

The plaintiff exhausted the NICS administrative appeal process. *See* filing 7-1 at 52-53; 28 C.F.R. § 25.10. He then filed this lawsuit. Both the United States and the State assert that the plaintiff's only recourse to obtain a firearm is to seek a pardon, or to otherwise try to overturn his conviction.

## III. DISCUSSION

Section 925A provides a legal remedy for individuals who are erroneously denied firearms. A person who has been denied a firearm may file a civil action against a state, a political subdivision, or the United States to direct the FBI or the reporting law enforcement agency to correct allegedly

5

erroneous information rendering a person ineligible to possess a firearm. §
925A; *see also Smith v. United States*, 63 F.4th 677, 678 (8th Cir. 2023).

## *Jurisdiction*

The United States moves to dismiss because this case is not yet ripe, and
the Court lacks subject matter jurisdiction, because the plaintiff has not
pursued all his available state remedies "that could alter or eliminate the
underlying federal firearms disability entirely." Filing 36 at 7. The United
States argues that Nebraska's remedial measures, to set aside his conviction
or ask for a pardon, must be exhausted before he can bring this lawsuit under
§ 925A.

However, the issue presented by this case is whether the plaintiff's 2009
misdemeanor is a qualifying offense that prohibits the plaintiff from owing a
firearm. The plaintiff does not contest the validity of his conviction, and he
appears to have no basis to obtain a pardon or otherwise set it aside. The
statute permits a person who is denied a firearm to bring an action against the
state and the United States if he is not, in fact, prohibited from receiving a
firearm. § 925A. That is precisely the claim the plaintiff is making. This case
is ripe, and this Court has jurisdiction.

## *Motion to Dismiss*

The controlling question is whether the plaintiff's 2009 conviction
constitutes a "misdemeanor crime of domestic violence" for purposes of §
922(g)(9), which prohibits any person convicted of such a crime from possessing
a firearm. A "misdemeanor crime of domestic violence" includes any state
misdemeanor offense that

6

has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, by a person similarly situated to a spouse, parent, or guardian of the victim, or by a person who has a current or recent former dating relationship with the victim.

§ 921(a)(33)(A)(ii). There's no question that the plaintiff was convicted of a misdemeanor that had, as an element, the use of physical force. *See* Neb. Rev. Stat. § 28-310(1). The parties disagree as to whether the plaintiff was the parent, or "similarly situated to" a parent, of the victim of the 2009 misdemeanor.

The plaintiff contends that whether he was convicted of a misdemeanor crime of domestic violence depends on the underlying conviction and state court records—but that is incorrect. If the United States prosecuted the plaintiff under § 922(g)(9), it would have to prove beyond a reasonable doubt that the plaintiff was in a qualifying relationship with the victim. *United States v. Hayes,* 555 U.S. 415, 426 (2009). That is a question for the trier of fact, and may depend on many circumstances. A qualifying relationship, "while it must be established, need not be denominated an element of the predicate offense." *Id.* That is, proving whether a person was in a qualifying relationship under § 922(g)(9) is not limited to the elements that had to be proven to sustain the underlying charge, nor the facts adjudicated in that offense, and the United States can rely on outside evidence. *See Brinson v. Garland,* No. 22-cv-9076, 2024 WL 2730455, at *4 (N.D. Cali. May 28, 2024). For example, in a § 922(g)(9)

7

prosecution, even if the defendant had only been convicted in state court of simple assault, the prosecution could still use extrinsic evidence to prove that the victim of the assault had been in a qualifying relationship with the defendant within the meaning of federal law.

But here, both the State and the United States contend that the plaintiff's relationship with the victim is a qualifying offense under § 922(g)(9) as a matter of law. They argue that, because the plaintiff was married to the victim's mother, he was the victim's stepfather, and was therefore "similarly situated" to a "parent" of the victim.

As the State acknowledges, there is "sparse case law" as to what types of relationships make a person "similarly situated" to a victim's parent. Filing 25 at 8. Neither "similarly situated" nor "parent" are defined in the statutory scheme, so the Court gives those words the plain and ordinary meaning they had when Congress enacted the statute in 1996. *See Sanzone v. Mercy Health, 954 F.3d 1031, 1040 (8th Cir. 2020)*. The "ordinary meaning inquiry" often begins with dictionary definitions. *See id.*

One contemporary dictionary defined "parent" as a person who "has begotten or borne a child; a mother or father," or who "holds the position or exercises the functions of a parent; a protector, guardian." *Parent*, Oxford Eng. Dictionary (2d ed. 1989). A more recent dictionary similarly provides that a parent is "a mother or father." *Parent*, New Oxford Am. Dictionary (2d ed. 2005). And the modern definition is relatively unchanged. *Black's Law Dictionary* (12th Ed. 2024) (a "parent" is the "lawful father or the mother of a person"); *Parent*, Merriam-Webster, https://www.merriam-webster.com/dictionary/parent (last visited July 7, 2026) (a parent is "one that begets or brings forth offspring," or "a person who brings up and cares for another").

"Stepfather" is often included alongside the definition of "father," but in the context of "adopt[ing] another as his child," *Father*, Oxford Eng. Dictionary (2d ed. 1989), or one who "has continuous care of a child," *Father*, New Oxford Am. Dictionary (2d ed. 2005). That is, a stepfather can *sometimes* be a "parent," based on the plain and ordinary meaning of that word, but it depends on the particular relationship, not the particular legal status as a child's biological parent's spouse.

The State argues that, in all instances, a stepparent is similarly situated to a parent based on the marriage alone, and neither a victim's age nor his actual relationship with his stepfather matter. In support of that assertion, the State cites to other statutes that specifically include "step" relationships in parent or child definitions. *See* 8 U.S.C. § 1101(b)(1)(B) ("child" includes "a stepchild . . . provided the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild occurred"); Neb. Rev. Stat. § 28-703(1)(b) ("incest" includes sexual contact with a "stepchild who is under nineteen years of age"); *cf.* Neb. Rev. Stat. § 42-903(3) ("Family or household members include[] . . . persons related by consanguinity or affinity").

That those statutes explicitly include stepparents as qualifying relationships, while §§ 921 and 922 do not, actually cuts against the State's argument: If Congress intended *all* stepparent-stepchild relationships to qualify under the statute, it could have said so. (And, nearly all the definitions depend on the stepchild being a minor, so age might have something to do with it.)

The State also relies on *Aguilar v. Valdez-Mendoza,* 16 N.W.3d 130 (Neb. 2025), for the proposition that a stepchild-stepparent relationship is one of "affinity." The problem with that argument is the Nebraska Supreme Court had to determine what "affinity" meant *as that word was used* in the particular

9

statute at issue. *See* Neb. Rev. Stat. § 42-903(3). Unlike that statute, § 921(33)(A)(ii) does not include all "persons related by affinity" as qualifying relationships.

The State likens a stepparent to a "live-in girlfriend," because courts have found that such a relationship may be similarly situated to a "spouse." Filing 25 at 8 (citing *Buster v. United States*, 447 F.3d 1130, 1133 (8th Cir. 2006)). But whether a girlfriend is "similarly situated" to a spouse requires evidence that the victim and perpetrator's relationship shared similarities to a traditional spousal relationship. *See Buster*, 447 F.3d at 1133. Specifically, to convict someone under § 922(g)(9) before 2022,[2] the United States had to at least prove that the defendant and the victim "shared an intimate personal relationship," and that they cohabited. *See id.*

The same is true here: for the plaintiff to be prohibited from possessing a firearm, his relationship with the victim of the 2009 misdemeanor must be similar to a parent's traditional relationship with a child. Relevant factors might include cohabitation (which could, in some circumstances, be dispositive, particularly where the stepchild is a minor), financial or other assistance, or anything else that signals the type of intimacy one would traditionally expect between father and son. *Cf.* § 921(a)(37)(B) (factors to consider in whether a relationship is a "dating relationship" include the length and nature of the relationship, as well as the "frequency and type of interaction between the individuals;" "casual acquaintanceship or ordinary fraternization . . . does not constitute a dating relationship").

---

[2] In June 2022, Congress amended the definition of "misdemeanor crime of domestic violence" to include offenses committed by a "person who has a current or recent former dating relationship with the victim." Bipartisan Safer Communities Act, Pub. L. No. 117-159, § 12005(a), 136 Stat 1313, 1332 (June 25, 2022).

10

The United States makes no effort to explain why the plaintiff's relationship with the victim qualifies under § 922(g)(9), and simply asserts the plaintiff failed to allege that he did not have a qualifying relationship with the victim. Filing 36 at 13. But the plaintiff plainly alleged in his complaint that "he has never been convicted of a misdemeanor crime of domestic violence." Filing 23 at 5. Liberally construed, the plaintiff has alleged that his relationship with the victim of the 2009 conviction is not a qualifying relationship under the statute.

Despite the defendants' assertions, under the definitions in § 921, marriage does not automatically confer "parent" or "guardian" status over a spouse's existing child, particularly where the "child" is a fully grown adult. Section 922(g)(9) was intended to keep "firearms out of the hands of domestic abusers." *Hayes*, 555 U.S. at 426. "Domestic violence" is a term of art, and, at the time § 922(g)(9) was passed, it was defined as "[v]iolence between members of a household," or "an assault or other violent act committed by one member of a household against another." *United States v. Castleman*, 572 U.S. 157, 179 (2014) (Scalia, J., concurring). While § 922(g)(9) applies to more than family members who live together, its scope is not so broad that it sweeps up technical, purely legal connections among persons who do not share anything resembling a "domestic" relationship.

Based on the present record, the plaintiff has adequately shown that his relationship with the victim of his 2009 misdemeanor would not qualify as a "domestic" relationship for purposes of § 922(g)(9). The victim and the plaintiff appear little more than acquaintances with no domestic or household ties, let alone a relationship that could be described as "similarly situated" to a parent of the victim. The motion to dismiss will be denied.

11

*Preliminary Injunction*

In determining whether to grant a preliminary injunction, the Court must consider the factors set forth in *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). Those factors are: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 114; *Morehouse Enters., LLC v. A.T.F.*, 78 F.4th 1011, 1016 (8th Cir. 2023). No single factor is dispositive, and the burden is on the movant to establish the propriety of the remedy. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994). Preliminary injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Choreo, LLC v. Lors*, 164 F.4th 667, 670 (8th Cir. 2026) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008)).

For much of the same reasons described above, the plaintiff has shown a likelihood of success on the merits, based on the present record before the Court. However, he has failed to adequately demonstrate the remaining *Dataphase* factors. The Court is not persuaded that the plaintiff's voluntary living situation in a remote area means he will suffer irreparable harm if he cannot purchase a firearm.[3]

The third and fourth factors for a preliminary injunction merge when the government opposes the motion. *Morehouse Enters.*, 78 F.4th at 1018. It is in the public interest to prevent, perhaps temporarily, a person who may be a

---

[3] While constitutional violations constitute irreparable harm in most instances, *Powell v. Ryan*, 855 F.3d 899, 904 (8th Cir. 2017) (en banc), the plaintiff explicitly does *not* raise his Second Amendment rights as a basis for relief in this lawsuit. Filing 23 at 2. The Court therefore declines to consider those rights as a basis for providing preliminary relief.

prohibited person from obtaining a firearm. Such protects firearms dealers from liability, *see* § 922(t), as well as would-be purchasers, *see* § 922(g). For these reasons, the plaintiff's motion for a preliminary injunction is denied.

IT IS ORDERED:

1. The Clerk of the Court is directed to substitute Todd Blanche, Acting Attorney General of the United States, for Pamela Bondi as a defendant pursuant to Fed. R. Civ. P. 25(d)(1).

2. The plaintiff's motion for expedited consideration and for preliminary injunction (filing 3) is denied.

3. The State's motion to dismiss (filing 24) is denied.

4. The United States' motion to dismiss (filing 35) is denied.

5. This case is referred to the magistrate judge for case progression.

Dated this 15th day of July, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge

13